UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

SEP - 9 1999

Michael N. Milby, Clerk

ALTECH CONTROLS CORPORATION AND
RICHARD ALSENZ,

        Plaintiffs

VS.

E.I.L. INSTRUMENTS, INC.,

        Defendant

CIVIL ACTION NO. H-92-3189

## ORDER

Pending before the Court in the above referenced action, alleging patent infringement of three patents,[1] pursuant to Fed. R. Civ. P. 50, is, _inter alia_, Defendant E.I.L. Instruments, Inc.'s ("E.I.L.'s or "Defendant's") motion for judgment as a matter of law that the '776 patent is invalid for obviousness (#447) under 35 U.S.C. § 103.

### Prior Dispositive Rulings

There have been numerous dispositive rulings in the course of the litigation. On June 5, 1997, after a Markman hearing, this Court construed the scope of the patent claims and entered findings of fact and conclusions of law and granted summary judgment in favor of E.I.L. on literal infringement (#324).[2] On December 3,

---

[1] United States Patent No. 4,612,776 ("the '776 patent"), issued on September 23, 1986, United States Patent No. 4,628,700 ("the '700 patent"), issued on December 16, 1986, and United States Patent No. 5,067,326 ("the '326 patent"), issued on November 26, 1991.

[2] Specifically the Court concluded that because claims 1, 2, 3, 7, and 24 of the '776 patent are limited to the first-on/first-off ("FIFO") strategy, E.I.L.'s controller devices RC-1000 and RC-

472

1997 the Court granted summary judgment also in favor of E.I.L. in concluding that the prosecution history estops Plaintiffs Altech Controls Corporation ("Altech") and Richard H. Alsenz's ("Alsenz's") claims of infringement of the asserted claims of the '776 patent by E.I.L.'s RC-1000 and RC-2000 under the doctrine of equivalency (#354). The remaining portion of this case dealing with infringement under the doctrine of equivalents, the validity of the '700 and '776 patents, and literal infringement of the '700 patent by E.I.L.'s RC-48, was tried to a jury from December 9-22, 1997. The jury found in favor of Plaintiffs Altech Controls Corporation and Richard H. Alsenz on all issues (#408).[3]

_____

2000 do not literally infringe the asserted claims. Literal infringement of a patent requires that each feature of the patent claim is found in the accused device. Texas Instruments, Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1563 (Fed. Cir. 1996), cert. denied, 520 U.S. 1228 (1997). In contrast, the other method of infringement under the doctrine of equivalents can be found only if the accused device contains elements identical or equivalent to each claimed element of the patented invention. Id. at 1566.

[3] Specifically the jury found that the RC-48 controller literally and under the doctrine of equivalents infringed Claims 9, 10, and 14 of the '700 patent and that E.I.L. had actual knowledge of the '326 patent before December 20, 1993. With respect to E.I.L.'s defenses, the jury further found that E.I.L. did not prove by clear and convincing evidence that the subject matter of Claim 24 of the '776 patent was operable before July 31, 1978, that it was embodied in a controller offered for sale before July 31, 1978, and that an offer for sale before July 31, 1978 of a controller embodying the subject matter of Claim 24 of the '776 patent was primarily for profit rather than for experimental purposes. In addition, the jury found that E.I.L. did not prove by clear and convincing evidence that Claim 24, as a whole, of the '776 patent, and Claims 9, 10, and 11, each as a whole, of the '700 patent, would have been obvious to a person or ordinary skill in the art at the time the invention was made. The instant motion, in essence, asks the Court to overturn that jury's verdict and find that the '776 patent Claim 24 is invalid because there is not substantial

- 2 -

Subsequently, in response to Plaintiffs' motion for judgment as a matter of law that Defendant is not entitled to a defense of laches relating to the '776, '700, and '326 patents and a separate motion for judgment as a matter of law that Defendant is not entitled to a defense of equitable estoppel relating to the '776 and '700 patents, the Court issued findings of fact and conclusions of law in favor of E.I.L. and its entitlement to prevail on both defenses of laches and equitable estoppel and denied both of Plaintiffs' motions for judgment as a matter of law (#444). In light of this background, the Court addresses the standard of review for the pending motion.

## Standard of Review

Under Federal Rule of Civil Procedure 50(a)(1), a district court may grant a judgment as a matter of law ("JMOL"), formerly known as a directed verdict, if after a party has been fully heard by the jury on an issue, "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." See Thomson, S.A. v. Quixote Corp., 166 F.3d 1172, 1174 (Fed. Cir. 1999), cert. denied, 119 S. Ct. 2395 (1999); Conkling v. Turner, 18 F.3d 1285, 1300 (5th Cir. 1994). Upon a motion for JMOL, a district court must review a jury's resolution of factual issues to determine whether there is

_____

evidence to support as a reasonable jury's finding that it was nonobvious.

substantial evidence to support them.  <u>Markman v. Westview
Instruments, Inc.</u>, 52 F.3d 967, 975-76 (Fed. Cir. 1995)(<u>en banc</u>),
<u>aff'd</u>, 517 U.S. 370 (1996).  Only if the movant shows that when the
correct legal standard is applied, i.e., that there is not
substantial evidence to support the finding in favor of the
nonmovant, should the jury's factual findings be overruled.  <u>Id.</u>
"Substantial evidence is 'such relevant evidence from the record
taken as a whole as might be accepted by a reasonable mind as
adequate to support the finding under review.'"  <u>Texas Instruments,
Inc. v. Cypress Semiconductor Corp.</u>, 90 F.3d at 1563 (quoting
<u>Perkin-Elmer Corp. v. Computervision Corp.</u>, 732 F.2d 888, 893 (Fed.
Cir.), <u>cert. denied</u>, 469 U.S. 857 (1984).  In reviewing factual
issues for substantial evidence, the court must inquire whether a
reasonable jury, in light of the record before it viewed as a
whole, could have arrived at the decision reached by the actual
jury.  <u>Dawn Equipment v. Kentucky Farms, Inc.</u>, 140 F.3d 1009, 1014
(Fed. Cir. 1998).  Here the Court must review the evidence in a
light most favorable to the nonmovants and make all reasonable
inferences in support of the verdict for Plaintiffs.  <u>Allied
Colloids, Inc. v. American Cyanamid Co.</u>, 64 F.3d 1570, 1573 (Fed.
Cir. 1995).  It must not weigh the evidence or consider the
credibility of the witnesses, matters which are within the province
of the jury.  <u>Id.</u>  A granting of a JMOL in favor of a party bearing
the burden of proof, a highly unusual occurrence given an accused
infringer's heavy burden of showing by clear and convincing

- 4 -

evidence facts supporting a conclusion of patent invalidity, is proper only after (1) the movant for a JMOL has "established [its] case by evidence that the jury would not be at liberty to disbelieve" and (2) "the only reasonable conclusion is in [the movant's] favor." Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1065 (Fed. Cir. 1998)(en banc), cert. denied, 119 S. Ct. 178 (1998), quoting Hurd v. American Hoist & Derrick Co., 734 F.2d 495, 499 (10th Cir. 1984).

## Obviousness under 35 U.S.C. § 103

A claimed invention is not patentable if the differences between it and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a)[4]; WMS Gaming, Inc. v. International Game Technology, 1999 WL 508800 *13 (Fed. Cir. July 20, 1999), citing Graham v. John Deere Co., 383 U.S. 1, 13-14 (1966). A party challenging the validity of a patent based on obviousness under § 103 must demonstrate prior art references which alone or combined with other references would have rendered the invention obvious to one of ordinary skill in the art at the time of invention. Al-Site Corp.

---

[4] The phrase, "at the time the invention was made," is a warning to preclude application of hindsight and to "cast[] the mind back to the time of invention, to consider the thinking of one of ordinary skill in the art, guided only by prior art references and the then-accepted wisdom in the field." In re Dembiczak, 175 F.3d 994, 999 (Fed. Cir. 1999).

- 5 -

v. VSI Intern., Inc., 174 F.3d 1308, 1323 (Fed. Cir. 1999).
Whether an invention is obvious is ultimately a legal conclusion
based on underlying factual determinations. The Board of Patent
Appeals and Interferences' legal conclusions of obviousness are
judicially reviewed de novo, while its underlying factual findings
are reviewed under the substantial evidence standard or the
arbitrary and capricious standard of the Administrative Procedure
Act, 5 U.S.C. § 706 (1994). Dickinson v. Zurko, 119 S. Ct. 1816
(1999); In re Youngblood, 1999 WL 504243 *3 (Fed. Cir. July 6,
1999); In re Oggero, 1999 WL 600407 *1 (August 10, 1999).

The factual findings in an obviousness analysis include the
scope and content of the prior art, the level of ordinary skill in
the art, the differences between the claimed invention and the
prior art,[5] and objective evidence of nonobviousness, or "secondary
considerations." WMS Gaming, 1999 WL 108800 *13, citing John
Deere, 383 U.S. at 17-18. Secondary considerations include
commercial success, long-felt need, the failure of others to solve
the problem, copying, and unexpected results. Ryko Mfg. Co. v. Nu-
Star, Inc., 950 F.2d 714, 716 (Fed. Cir. 1991)[6]; Environmental
Designs, Ltd. v. Union Oil Co., 713 F.2d 693, 695 (Fed. Cir. 1983),
cert. denied, 464 U.S. 1043 (1984). The objective evidence of
secondary considerations must be linked to the claimed subject

_____

[5] What a prior art references is a question of fact. In re
Beattie, 974 F.2d 1309, 1311 (Fed. Cir. 1992).

[6] Scope and content of the pertinent prior art are the
"primary" considerations. Ryko, 950 F.2d at 716.

- 6 -

matter, for purposes of this JMOL motion the subject matter of '776 patent Claim 24. <u>Medtronics, Inc. v. Intermedics, Inc.</u>, 799 F.2d 734, 740 (Fed. Cir. 1986), <u>cert. denied</u>, 479 U.S. 1033 (1987). Because a patent is presumed to be valid under 35 U.S.C. § 282,[7] the party challenging validity bears the burden of showing by clear and convincing evidence that the patent or a claim in a patent is invalid. <u>WMS Gaming</u>, 1999 WL 108800 *13, <u>citing</u> <u>Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH</u>, 139 F.3d 877, 881 (Fed. Cir. 1998). The presumption of validity applies to each claim in a patent, independently of other claims. 35 U.S.C. § 281. The burden of proof is more easily carried if references on which the assertion of invalidity is based were not directly reviewed by the patent examiner during the patent prosecution. <u>Id.</u>, <u>citing</u> <u>Advanced Semiconductor Materials Am., Inc.</u>, 98 F.3d at 1569.[8]

If the determination of obviousness depends on the combination of two or more references, there must be a suggestion or motivation to combine the references. <u>Id.</u> at *14, <u>citing</u> <u>In re Rouffet</u>, 149 F.3d 1350, 1355 (Fed. Cir. 1998). That suggestion or motivation to

_____

[7] <u>Applied Materials v. Advanced Semi Materials America, Inc.</u>, 98 F.3d 1563, 1569 (Fed. Cir. 1996) ("The presumption of validity is based on the presumption of administrative correctness of actions of the agency charged with examination of patentability.").

[8] The burden is more difficult if the prior art was before the examiner during the prosecution of the patent application because the presumption of patent validity under 35 U.S.C. § 282 "'carries with it a presumption that the Examiner did his duty and knew what claims he was allowing.'" <u>Al-Site</u>, 174 F.3d at 1323, <u>quoting</u> <u>Intervet America., Inc. v. Kee-Vet Labs., Inc.</u>, 887 F.2d 1050, 1054 (Fed. Cir. 1989).

- 7 -

combine may be found in explicit or implicit teachings within the references themselves, from the ordinary knowledge of those skilled in the art, or inherent in the nature of the problem to be solved. Id., citing Rouffet, 149 F.3d at 357. "'When determining the patentability of a claimed invention which combines two known elements, 'the question is whether there is something in the prior art as a whole to suggest the desirability, and thus the obviousness, or making the combination.'" Id., citing In re Beattie, 974 F.2d 1309, 1311-12 (Fed. Cir. 1992). This requirement of describing a teaching or suggestion or motivation to combine is rigorously enforced to avoid the dangers of hindsight, and the showing must be clear and particular.  In re Dembiczak, 175 F.3d 994, 999-1000 (Fed. Cir. 1999).  Broad, conclusory statements are not adequate.  Id.  In determining whether obviousness is established by combining the teachings of the prior art, "the test is what the combined teachings of the references would have suggested to those of ordinary skill in the art."  In re GPAC, Inc., 57 F.3d 1573, 1581 (Fed. Cir. 1995).  To invalidate a patent for obviousness, the challenger must show that the combined teaching of the prior art references must suggest, expressly or by implication, the improvements embodied by the invention.  Id.

### E.I.L.'s JMOL Motion

E.I.L. argues that no reasonable jury should have concluded that the '776 patent was not invalid for obviousness based on the

- 8 -

evidence for three reasons.

First, E.I.L. observes, rejected (and therefore part of the public domain) application Claim 23/10 included every limitation of patent Claim 24 except that the "time delay means" of rejected claim 23/10 is expressed in patent claim 24 as "a timing circuit." Thus the only difference between public domain subject matter in application claim 23/10 and patent claim 24 is a "timing circuit" as the specific type of a "time delay means."

Second, a timing circuit was never argued to the Patent Office as a basis for patentability.

Third, all who testified on timing circuits, including Dr. Rhyne, Dr. Shelton, and Plaintiff/inventor Richard Alsenz, testified that timing circuits were well known in the art as a specific way to implement a time delay means as of July 1979 and beforehand. Plaintiffs' counsel admitted this point in his closing arguments. Ex. B to motion for summary judgment; Trial Transcript ("TT"), Vol. 9, at p. 1960.

Because the Constitution allows patent coverage only for subject matter that promotes the progress of science, E.I.L. argues that in light of these three facts, Claim 24 does not promote the progress of science and therefore should be invalidated.

E.I.L. contends that the prosecution history of the '776 patent and of Claim 24 in particular reveals that Claim 24 should never have been allowed by the patent examiner. Claim 24, which is directed to an apparatus for controlling a plurality of

- 9 -

compressors, contains no limitation as to whether the compressors
are equal-sized or unequal sized.[9]    The prosecution history
demonstrates that the patent examiner consistently rejected all
claims directed only to the first-on/first off ("FIFO") controller
sequence that did not include the unequal capacity limitation
except for Claim 24.   The prosecution history also indicates that
Alsenz added the specific disclosure of unequal capacity
compressors to his second application to define the invention over
the prior art.   E.I.L. maintains that because all other claims of
like scope were finally rejected and their rejection was affirmed
on appeal, Claim 24 should have been rejected.

Furthermore and equally significant, the only difference
between patent Claim 24 and rejected application Claim 23/10 is the
detail of a timing circuit as a particular type of time delay
means.   The well known expedient of a time delay means was not a
sufficient basis for giving patentable status on an otherwise
unpatentable subject matter, insists E.I.L.

There is no dispute that the original application for the '776
patent submitted to the Patent and Trademark Office did not include
a specific disclosure to unequal capacity compressors.   JX-776 at
pp. 22-29 (no limitation in any of the original claims regarding
the compressor capacity).   Without such a limitation of unequal
capacity compressors, all the originally submitted claims were

_____

[9] This absence contrasts with the disclosure of Claims 1 and
3 of the same patent, which contain express limitations that the
compressors are of "inequal" and "unequal" capacities.

rejected and ultimately abandoned.  JX-776 at pp. 81-82, 84.

In contrast, Alsenz's second application for the '776 patent contained newly added language relating to unequal capacity compressors.  JX-776, Tab 24, at pp. 54-69.  When Alsenz was questioned about why the wording "unequal capacity" had been added to the second application, Alsenz responded that it was to enable the claims to be limited to define them over the prior art.  Ex. A to JMOL motion based on obviousness; TT Vol 7A at pp. 1448-49. Claims 6 and 10 of the Preliminary Amendment of the second application did not include any limitation with respect to unequal capacity compressors, while Claims 7 and 8 did.  JX-776 at Tab 23, pp. 32-25.

Furthermore, notes E.I.L., application Claims 16 and 17 depended from Claim 6, while application Claims 23 and 24 depended from either Claim 8 (an unequal capacity claim), identified in string form as application Claim 24/23/8, or from Claim 10 (a claim with no limitation with respect to unequal capacity), referred to as 24/23/10.  Thus there were separate application claims 24/23/10 and 24/23/8.  Application Claim 16 was worded identically to application Claim 23, and application Claim 17 was worded identically to application Claim 24.  Thus application Claim 17/16/6 was materially identical to application Claim 24/23/10. Application Claim 17/16/6 was finally rejected, but 24/23/10 was not.  E.I.L. argues that this disparate resolution casts doubt on the latter's validity.

- 11 -

E.I.L. further contends that the rejections and allowances of application Claims 6, 7, 8, 10, 10/23, 16, 17, and 34 demonstrate that Claim 24 should never have been allowed.  E.I.L. observes that in the first Office Action, the initial rejections by the patent examiner of application Claims 6, 7, 8, 10, 10/23, 16, 17, and 24[10] were followed by an amendment of Claims 7, 8, 10 to provide the FIFO limitations, as this Court previously determined.  (Claim 6 already explicitly included FIFO limitations.)  JX-776, Tab 31, at pp. 119-23.

After Alsenz's submission of a Supplemental Response (Tab 32), the patent examiner, based on the Goldber, Evalds, and Friedman prior art patents, again rejected Claims 6, 10, 23/10, and 24/23/10, which had no limitations to unequal capacity compressors. The examiner also rejected Claims 7, 8, and 24/23/8, which did include the limitation that the compressors were unequal in size, based on the same three references plus a reference to the Kesterson prior art patent, which the examiner stated "makes it obvious to provide compressors of unequal capacities." JX-776, Tab 33, at p. 166.

Urging that his invention is not obvious, Alsenz filed a response (JX-776, Tab 35, at pp. 176-79) in which he argued that the citation to the Kesterson patent was in error because it does not teach that compressors are of unequal capacities except when they are connected in a LIFO strategy and Kesterson is thus

_____

[10] JX-776, Tab 27, at pp. 108-12.

contrary to his claimed invention.[11]

The examiner allowed claims that included both the FIFO limitation and unequal capacity compressors, i.e., application Claims 7 and 8. JX-776, Tab 37, at p. 185. The examiner simultaneously rejected claims that included the FIFO limitation, but not the limitation to unequal capacity compressors, i.e., application Claims 6, 16, 17 and 23/10. JX-776, Tab 37, at p. 185.

Significantly, application claim 24/23/10, which ultimately became patent Claim 24, must have been overlooked by the examiner because he neither allowed nor rejected it even though he was obligated to designate all claims.

In a response filed subsequent to that rejection, Alsenz asked about particular claims and noted that "claim 24/23/10 is deemed to be rejected by the examiner." JX-776, Tab 38, at p. 191.

In the Advisory Action following, the examiner listed Claim 24 as "allowable," but did not alter his rejection of Claims 6, 16 or 17, nor 23/10. E.I.L. points out that patent lawyer Bryan Medlock, expert on procedures in application for a patent, testified that an

---

[11] Specifically Alsenz argued,

> The Kesterson patent has been cited for something which it does not teach. The compressors individually are not of unequal capacity. Only when they are connected in a LIFO strategy is the underlying capacity changed. Again, the teachings to a person of skill in the art is [sic] exactly opposite to the system claimed by applicant, a clear additional showing of unobviousness!

JX-776, Tab 35, pp. 178-79.

Advisory Action is a somewhat ministerial act and not a stage when
claims are reviewed substantively.  Ex. C to E.I.L.'s JMOL on
obviousness; TT, Vol. 7A at pp. 1494-95.  Therefore, concludes
E.I.L., the examiner apparently erred in this new listing of Claim
24 as allowable.  Noting that Claim 23, which, as previously
discussed, depended from both allowed Claim 8 and rejected Claim
10, was also rejected, E.I.L. asserts that the examiner erred in
listing application Claim 24 as allowable.  E.I.L. notes that the
examiner overlooked the fact that application Claim 24 was
dependent on a string of rejected claims as well as on a string of
allowed claims and erroneously listed it as allowable without
reference to the different strings of dependency.  The fact that
other similar application Claims (i.e., 6, 16, 10, 17, and 23/10)
were rejected by the examiner highlights the examiner's error
regarding application Claim 24.

Alsenz appealed the rejections of the claims to the Patent
Office Board of Patent Appeals and Interferences, which affirmed
the rejections of all claims for obviousness, including 6, 16, 17,
and 23/10.  The Board stated,

> To the contrary, we hold, as did the examiner,
> that the differences between the subject
> matter of the claims before us here on appeal,
> which appellant has elected to argue without
> regard to any particular claim or limitation
> thereof, and the prior patent to Goldber
> applied by the examiner are such that the
> subject matter of the appealed claims, taken
> as a whole, would have been obvious to one of
> ordinary skill in the art armed with the
> teachings of Evalds and Friedman at the time
> the invention of the claims here on appeal was

- 14 -

made.

JX-776, Tab 54, at p. 391.   Thus application Claim 23/10, which
included all limitations of patent Claim 24 except for the timing
circuit, was rejected as being obvious under § 103, as were Claims
6, 16, and 17.

E.I.L. emphasizes that the prosecution history of the '776
patent reflects that Alsenz never argued a timing circuit as a
basis for patentability.

E.I.L. further explains the significance of the rejection of
application Claim 23/10.  This rejected application claim included
the limitation of a "time delay means for providing a time delay
prior to energizing or de-energizing a subsequent compressor in the
system."    The sole difference between patent Claim 24 and
application Claim 23/10 is that the time delay means in patent
Claim 24 is a timing circuit

> for receiving said increase and decrease
> capacity signals from said detection means and
> in response thereto generating delayed
> increased and decreased capacity signals.

DX-237.  Application Claims 6, 16, and 17, which included the same
or similar limitations of patent Claim 24, were rejected by the
examiner, and the rejection was affirmed on appeal.  Application
Claim 17 is more limited and narrowed than patent Claim 24 because
of language regarding the control circuit's being connected to
"said sequencing means for tandemly connecting energizing signals
. . . ."  As noted, rejected application Claims 6, 16, and 17 are
materially identical to patent Claim 24.  DX-200.  Therefore,

- 15 -

E.I.L. insists that the rejection of application Claims 23/10 and 17/16/6, in addition to the comparison of Claim 24 to these rejected claims, proves, indisputedly and convincingly, that application Claim 24 should never have been allowed and is not patentable, even if the jury at trial did not understand their significance.

E.I.L. furthermore argues that although patent Claim 24 is entitled to the statutory presumption of validity under 35 U.S.C. § 281, under the facts of this case E.I.L.'s burden is more easily carried because of two uncontrovertible facts. First, the patent examiner rejected for obviousness application Claim 17,[12] which depended from 16, which depended from 6 (17/16/6), and the rejection was affirmed by the Board of Patent Appeals and Interferences, comprised of three examiners-in-chief, which wrote in its opinion:

> We take this position because we firmly believe that the Examiner has provided in the references applied by him a solid evidentiary base for his conclusion of obviousness as to the subject matter of the claims here before us on appeal. A base which, in our studied opinion, the evidence of secondary considerations supplied by the appellant has failed to overcome. Under these circumstances, and for the reasons advanced by the Examiner, we feel obligated to and do affirm his decision.

JX-776, Tab 54, pp. 391-92. E.I.L. contends that a comparison of rejected application Claim 17 to patent Claim 24 reveals that they

---

[12] JX-776, Tab 54, at pp. 391-92.

are materially identical. DX-200. Thus the examiner erred in allowing patent Claim 24, which should, like Claim 17, have been rejected.

Second, The Manual of Patent Examining Procedure ("MPEP")[13] in effect at the time of the prosecution of the '776 patent requires that an applicant shall disclose "possible" offers for sale to the patent examiner. DX-130, DX-131, DX-132, DC-133, DX-134, DX-135, DX-136. The evidence of Bendikson and Moskowitz, discussed in the Court's order regarding the on-sale bar, demonstrated at least a "possible" offer for sale. It is undisputed that Alsenz did not disclose the possible offer for sale to the PTO.

Thus, maintains E.I.L., these two facts materially reduce E.I.L.'s burden in overcoming the presumption of validity, insists E.I.L.[14] Testimony of patent lawyer Bryan Medlock, Ex. C to E.I.L.'s JMOL on obviousness; TT, Vol. 7A at pp. 1457-60.

Even if the jury verdict results in giving the possible on-sale no weight and even if the presumption of validity is not

_____

[13] The MPEP "does not have the force of law, but is well known to those registered to practice in the PTO and reflects the presumptions under which the PTO operates." In re International Flavors & Fragrances, Inc., 1999 WL 508777 (Fed. Cir. July 20, 1999), citing Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1257 (Fed. Cir. 1997), cert. denied, 118 S. Ct. 1510 and 1511 (1998).

[14] Advanced Semi Materials, 98 F.3d at 1569 ("The presentation at trial of additional evidence that was not before the PTO does not change the presumption of validity or the standard of proof, although the burden may be more easily carried because of the additional evidence.").

- 17 -

affected, E.I.L. contends, the slight difference between rejected application Claim 23/10 and allowed patent Claim 24 compels a conclusion of invalidity of the latter for obviousness, especially given the undisputed testimony that timing circuits were well known in 1979 and even before as specific implementation of a time delay means.

E.I.L. then discusses the factors considered in an obviousness analysis under <u>Graham</u>. First, the scope and content of prior art includes rejected claim 23/10, in view of its rejection by the examiner as unpatentable and the Board of Patent Appeals and Interferences' affirmance of that rejection, based on the following prior art: Goldber (U.S. Patent No. 3,513,662), Evalds (U.S. Patent No. 3,717,3000), and Friedman (U.S. Patent No. 4,184,341). JX-776, Tab 54, at p. 384. Plaintiffs' technical expert witness, Dr. Sam Shelton, testified that the subject matter of claim 23/10 because of its rejection is in the public domain. Ex. F to JMOL on obviousness; TT, Vol. 3 at pp. 603-04. Defendant's patent law expert, Bryan Medlock, agreed that the PTO's rejection of the claim as unpatentable based on prior art means that it is obvious to one of ordinary skill in the art and is and has been in the public domain, therefore constituting the scope and content of the prior art. Ex. C to JMOL on obviousness; TT. Vol. 7A at pp.1471-73.

E.I.L. further points out that the scope and content of the prior art also includes rejected application Claim 17/16/6, which E.I.L. has previously noted is materially identical to Claim 24.

It, too, comprises the scope and content of the prior art.

Also prior art is the Hussman controller.  DX-67 and DX-68 demonstrate that Plaintiffs are collaterally estopped from contesting the prior art status and the details of the Hussman controller.  DX-67 at p. A24 reflects that the Hussman controller includes the features of time delays and upper and lower pressure limits for a plurality of compressors, the two features of Alsenz's invention that Podraza testified resulted in energy efficiency.

In sum, E.I.L. argues that the scope of the prior art includes every limitation in patent claim 24.  See Rejected application Claim 17/16/6.  At bare minimum, the prior art included every part of patent Claim 24 except the detail of a timing circuit.  See Rejected application Claim 23/10.

Moreover, the differences, if any, between patent Claim 24 and the prior art are not patentable.  Rejected application Claim 17/16/6, as noted earlier, is materially identical to patent claim 24,[15] and thus the affirmed rejection of 17/16/6[16] indicates that there is no material difference between the prior art and Claim 24.

Even if one views Claim 24 in the way most favorable to Plaintiffs, the only possible minimal difference between it and rejected claim 23/10 is that the time delay means recited in public domain subject matter 23/10 is a timing circuit.  The testimony of experts from both sides, Plaintiffs' Dr. Sam Shelton (Ex. F to JMOL

---

[15] DX-200.

[16] See JX-776, Tab 54, at pp. 391-92.

- 19 -

motion on obviousness; TT, Vol. 3 at pp. 597-98) and Defendants'
Dr. Thomas Rhyne (Ex. E to JMOL on obviousness; TT Vol. 7A at pp.
1561-66), established that timing circuits were well known as of
1978. Dr. Rhyne stated not only that timing circuits were common
then and that the choice of a particular timing circuit would be
within the skill of any college student that he taught, but Rhyne
also noted that he had disclosed in an early 1970's publication a
"one shot" timing circuit.  Id.   Thus according to E.I.L., the
record contains uncontroverted evidence that timing circuits were
common in 1979 and before that date.

Moreover, demonstrating that the level of ordinary skill in
the field of refrigeration compressor controllers is high, Dr.
Shelton testified that a person of ordinary skill in the art would
at minimum have a bachelor's degree in mechanical or electrical
engineering and three years' experience working in the
refrigeration field. Ex. F; TT, Vol. 3 at p. 524.

E.I.L. points to other objective evidence of secondary
considerations supporting nonobviousness.   First, although
Plaintiffs allege that E.I.L. copied the subject matter of patent
claim 24, the only product accused of such infringement is E.I.L.'s
RC-48 controller, which the evidence shows was in the marketplace
around 1984, two years prior to the issuance of the '776 patent.
Second, while Plaintiffs tout evidence that the subject matter of
claim 24 effected significant energy savings, Podraza conceded that
the features resulting in the energy savings were the means for

- 20 -

establishing the upper and lower suction pressure set points and the time delay. Both elements were within the subject matter of public domain claim 23/10 and were in combination in the prior art Hussman device. DX-67. Third, while the FIFO control's advantage was to distribute the wear on compressors more evenly, the evidence reflects that not everyone wanted that end. E.I.L.'s RC-48 included modes 5-7 (FIFO), 1-3 (LIFO), and 8-12 (user-programmable). Shelton conceded that FIFO was not a cure-all and that FIFO was not suitable for use with unequal capacity compressors and that he would not use modes 5-7 of the RC-48 with unequal capacity compressors. Ex. F; TT, Vol. 3, at p. 555. Finally, evidence of copying and commercial success was presented to the PTO by Alsenz's May 4, 1985 declaration, but both the examiner and the Patent Office Board of Appeals and Interferences concluded that such evidence did not overcome the "solid evidentiary base . . . of obviousness" and thus did not support non-obviousness. JX-776, Tab 54, at p. 391.

In sum, when the subject matter of patent Claim 24 is viewed as a whole, the undisputed evidence clearly and convincingly establishes (1) that there is no material difference between rejected Claim 17/16/6 and Claim 24; (2) that the only difference between rejected application Claim 23/10 and Claim 24 is that the time delay means of application Claim 23/10 is expressed as a timer circuit; and (3) that timing circuits were well known and common when Alsenz developed the subject matter of Claim 24, even by

engineering students who are of less than ordinary skill in the art according to Plaintiffs' and Defendant's experts. Shelton testimony, Ex. F, TT, Vol. 3 at p. 524; Rhyne, Ex. E, TT, Vol. 7A at pp. 1561-66. E.I.L. maintains that this evidence along with the fact that information in the public domain (Claim 23/10), the prior art Hussman controller, and unpatentable devices (Alsenz's LIFO sequences--see DX-52, at p. 2 re 2/8/78), achieved the claimed energy savings, leads to only one conclusion, i.e., that Claim 24 did not advance the progress of science or knowledge in the field of refrigeration controllers and it should therefore be invalidated as unpatentable under 35 U.S.C. § 103. Indeed Claim 24 is obvious as a matter of law and E.I.L.'s JMOL motion should be granted.

### Plaintiffs' Response

In response, insisting that the jury's verdict finding that Claim 24 is not invalid and not obvious over prior art is supported by substantial evidence, Plaintiffs assert that E.I.L. ignored the legal standard for obviousness established by Graham v. John Deere, 383 U.S. 1 (determine the scope and content of the prior art and then evaluate the differences between that prior art and the invention defined by patent Claim 24), barely discussed what the jury had been told was prior art (i.e., Goldber, Evalds, and Friedman patents), and did not argue that any of those references came close to describing the complete invention of Claim 24. Instead, they complain that E.I.L. focused on its claim on the

contention that "nearly every limitation, except possibly the detail of the timing circuit," could be found somewhere in at least one of the prior art references.  Plaintiffs maintain that the Federal Circuit has frequently rejected the argument that a claim is invalid because it is a combination of old elements.  Usually each element of any claimed invention can be found somewhere in the prior art.  The proper question is whether a person of ordinary skill in the art would have found it obvious to combine those elements into a single invention.  <u>Kahn v. General Motors Corp.</u>, 135 F.3d 1472, 1480 (Fed. Cir. 1998), <u>cert. denied</u>, 119 S. Ct. 177 (1998).  Generally to show obviousness one must show either a teaching or suggestion in the prior art to combine the elements. <u>Id.</u> ("It is insufficient to establish obviousness that the separate elements of the invention existed in the prior art, absent some teaching or suggestion, in the prior art, to combine the elements."); <u>Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.</u>, 103 F.3d 1538, 1546 (Fed. Cir.), <u>cert. denied</u>, 521 U.S. 1122 (1997)(finding claims were not obvious because of a lack of motivation or suggestion to combine elements); <u>Sensonics, Inc. v. Aerosonic Corp.</u>, 81 F.3d 1566, 1570 (Fed. Cir. 1996)(finding claims not obvious based on lack of teaching or suggestion in the art to make the claimed combination).

Instead of comparing Claim 24 with the prior art references provided to the jury in compliance with Graham, Plaintiffs charge, E.I.L. improperly compared Claim 24 with claims that were rejected and canceled during the prosecution. Rejected claims are not prior art, they insist. The Federal Circuit has rejected a similar attempt in Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1141 (Fed. Cir. 1985)(rejecting as a matter of law a comparison of a claim in a reissue patent with an original patent claim that had been held invalid; an invalidated claim cannot serve as prior art against a new claim added during the reissue process).[17] Being in the public domain means not being covered by a claim of an existing patent. Shelton did not testify that a claim became prior art simply by being rejected—such a statement would be incorrect under Interconnect Planning. Plaintiffs contend that the Interconnect Planning rule should apply equally to the prosecution of an original patent application, so that a claim rejected during a patent prosecution has no relevance with respect to the validity of the surviving claims.

According to Plaintiffs, E.I.L. failed to present any evidence

---

[17] Accusing E.I.L. of Dr. Shelton's testimony that the rejected claims were in the public domain to get the Court to view the rejected claims as "prior art," Plaintiffs note that being in the public domain meant not being covered by a claim of an existing patent. Dr. Shelton did not testify that the elements in the rejected claims existed in that combination in the prior art, but only that the examiner did not allow that combination to issue as a claim. If Shelton had testified that a claim became prior art merely by being rejected and canceled, his testimony would be contrary to Interconnect.

- 24 -

that Claim 24 was invalid because it was obvious.  Its only witness regarding obviousness was patent lawyer Bryan Medlock, who testified that he had no opinion whether Claim 24 would have been obvious over the prior art.  Although E.I.L cited much testimony, it was directed to the scope of other claims than Claim 24 and to prosecution irregularities, and was therefore irrelevant since the Federal Circuit has rejected the legal arguments made by E.I.L. Thus it has failed to carry its burden of proving by clear and convincing evidence that Claim 24 is obvious and that the only reasonable jury verdict would have been to find Claim 24 invalid for obviousness.  Thus its JMOL motion should be denied.

E.I.L. also isolated one element of the claim, the time delay, and argued that it was obvious.  In an obviousness analysis, a claim must be viewed as a whole, insist Plaintiffs.  Interconnect Planning, 774 F.2d at 1143.  It is insufficient to demonstrate that each component used by an inventor had been used in other inventions to show obviousness when the inventor is claiming a combination, here a compressor controller that used a time delay circuit in the manner described in Claim 24 as a whole.  That the time delay element was known does not indicate obviousness of the claim as a whole.

Furthermore, argue Plaintiffs, E.I.L. must point to a suggestion to combine the various prior art references of Goldber, Evalds, Friedman and others and their teachings to show that the combination of features in Claim 24 is obvious.

- 25 -

Moreover, Plaintiffs argue that the new combination of a single upper and lower set point with an electronic controller employing rotational logic with a time delay achieved unexpected results. Podraza testified that this combination produced "double savings" in energy, permitting the refrigeration cases to run at the highest possible pressure while reducing case breathing by keeping the pressure within a narrow band. Ex. A; TT, Vol. 2, at pp. 338-40. Podraza specifically stated that the use of the invention reduced energy in supermarkets by 15-18% Id. at pp. 350-51. He also testified that the invention was not obvious to the engineers and mechanics that worked at the Weingarten supermarkets at the time. Id. at 351-53.

Plaintiffs highlight the fact that before Alsenz invented his product, separate pressure switches were used on each compressor. Ex. A, TT, Vol. 2A at pp. 424, Vol 3 at p. 678. Dr. Shelton testified that prior art controllers fluctuated pressure over a wide band, causing high energy consumption. Ex. A; TT, Vol. 2A, at 418-19. The invention claimed in Claim 24 replaced multiple pressure bands with a single one and included a time delay circuit to prevent short cycling. Ex. A; TT. Vol. 2A, at pp. 428-35. Dr. Shelton testified that this kind of controller allows a narrow pressure range because it does not cycle on and off the same compressor. Ex. A, TT, Vol. 3, at pp. 584-88. Shelton, Cuin, and Bendikson testified that Alsenz was the first person to put all of these features together in one product. Ex. A. TT, Vol. 2A at pp.

- 26 -

435-36, Vol. 3 at 702, Vol. 4 at 820, 823-24. Dr. Shelton further
testified that while individual claim elements were known, there
was no teaching suggesting integrating the elements together. Ex.
A, TT, Vol. 3 at pp. 522, 581.

Thus Plaintiffs insist that substantial evidence was presented
to the jury from which it could determine that Claim 24 was not
obvious.

Moreover, an obviousness inquiry goes beyond the differences
between the prior art and the claimed invention and includes
evidence of secondary considerations, which may be the most
probative and cogent evidence of nonobviousness. Stratoflex, Inc.
v. Aeroquip Corp., 713 F.2d 1530, 1538 (Fed. Cir. 1983); Gambro
Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573, 1579 (Fed.
Cir. 1997)("These objective indicia may often be the most probative
and cogent evidence of nonobviousness in the record."). Plaintiffs
insist that the evidence of secondary considerations here provided
substantial proof that Claim 24 would not have been obvious to one
of ordinary skill in the art.

The jury was instructed about secondary considerations such as
commercial success of the patented invention, long-felt but
unresolved need for the invention, failure of others to provide a
solution to the problem solved by the invention, whether E.I.L. or
others copied the claimed inventions, unexpected results achieved
by the invention, praise of the invention by the infringer or
others in the field, skepticism about the invention by experts in

- 27 -

the art, and what the patentee provided was contrary to accepted wisdom, i.e., the prior art taught away from the claimed invention.

Plaintiffs discuss several key secondary considerations in this case. First, they contend, prior art taught away from the invention of Claim 24 of a single controller and single pressure band. Shelton and Podraza testified that before the invention by Alsenz, supermarkets uniformly utilized separate controllers on each compressor, resulting in overlapping pressure bands and causing a very wide band and high energy consumption. Ex. A, TT, Vol. 2A at pp. 418-19. Other patents also taught away from the invention of Claim 24. For instance, Goldber used a LIFO sequencing scheme with unloaders (Ex. A, TT, Vol. 6A at pp. 1244-48, 1522-23) and with compressors connected in parallel. Evalds used a tandem (or sequential) FIFO scheme to control heaters, instead of a parallel FIFO scheme to control compressors (Ex. A, TT, Vol. 7A at pp. 1523-24.

Plaintiffs further argue that the invention of Claim 24 met a long-felt need. Dr. Shelton testified that many people had tried unsuccessfully to solve the wide pressure band problem, while Podraza testified that when he requested Hussman to develop such a controller, Hussman had said such a controller would be too expensive to build. Ex. A; TT, Vol. 2A at pp. 437-38, 442, Vol. 2 at 338-40, Vol. 2A at 418-19, 425-35. Shelton concluded that Alsenz solved the puzzle by looking at it in a different way than his predecessors. Alsenz described in detail a number of problems

- 28 -

he confronted in developing his controller, including difficulties with oil distribution, cases breathing, controlling different cases at different temperatures, and expansion valve problems. Ex. A, TT Vol. 5 at pp. 1055-57. Furthermore, the industry's adoption of the Altech controller demonstrates its nonobviousness and acceptance, maintain Plaintiffs. Cuin testified that the supermarket was very hesitant about trying new control products because of concern that perishable food products would spoil if the controller failed. Ex. A, TT, Vol. 5 at pp. 857-61, 877. Yet the industry adopted the Altech controller very rapidly, "incredibly fast" according to Shelton. Ex. A., TT, Vol. 2A at p. 441. Arkie Lures, Inc. v. Gene Larew Tackle, Inc., 119 F.3d 953, 957 (Fed. Cir. 1997)(swift acceptance by industry is evidence of nonobviousness). Thus, given this evidence, a jury could have reasonably found that the invention of Claim 24 was not obvious.

Praise from others in the industry for the Altech controller is also evidence of its nonobviousness. Gore & Assoc. v. Garlock, Inc., 721 F.2d 1540, 1554-55 (Fed. Cir. 1983), cert. denied, 469 U.S. 851 (1984). Specifically, a refrigeration maintenance engineer for a large supermarket chain, Paul Watson, testified that the Altech controllers

> have revolutionized the whole industry . . . .
> [I]t brought it out of the dark ages. It
> hadn't changed for a hundred years. But now
> we're using technology available to benefit
> our refrigeration systems and our profit
> margins and out product loss, and everything
> else we try to do with an energy management.
> But strategically, to change this whole

- 29 -

industry.

TT, Vol. 5 at pp. 1046-47.

Under Graham, a challenged claim is to be compared with the prior art, insist Plaintiffs. Rejected or canceled claims are not properly "prior art." In arguing that claims 17/16 and 23/10 were rejected and then canceled claims, thus becoming part of the "public domain" according to Dr. Shelton (TT, Vol. 3 at pp. 603-04), E.I.L. failed to cite a single case holding that a canceled claim is prior art. A rejected or invalid claim is not considered prior art as to other claims, even to other claims in a reissue patent. Interconnect Planning, 774 F.2d at 1141 (holding that an invalidated claim in a patent cannot serve as prior art against a new claim added during the reissue process; "the reissue claim alone . . . is to be analyzed in accordance with the Graham guidelines, and the differences to be considered are the differences between the reissue claim as a whole and the prior art."); Ronald Harmon, Patents and the Federal Circuit § 4.4 (4th ed. 1998) Moreover, they insist, the scope and content of the prior art are questions of fact for the jury,[18] which presumably rejected E.I.L.'s argument that certain rejected claims from the patent application should be considered within the scope of the prior art in finding that Claim 24 was not obvious.

Furthermore, Plaintiffs maintain that prosecution history irregularities are not relevant to an obviousness determination,

_____

[18] In re Beattie, 974 F.2d 1309, 1311 (Fed. Cir. 1992).

- 30 -

and thus neither is E.I.L.'s argument that Claim 24 is obvious
based on such irregularities.  Magnavision, Inc. v. Bonneau Co.,
115 F.3d 956, 960 (Fed. Cir. 1997)(prosecution irregularities are
not relevant to patent validity), cert. denied, 119 S. Ct. 880
(1998); Greenwood v. Hattori Seiko Co., Ltd., 900 F.2d 238, 240-41
(Fed. Cir. 1990)(focus of defense of obviousness must be on prior
art relied upon by the defendant under Graham, not merely
activities occurring during patent prosecution).  Plaintiffs argue
that E.I.L. never conducted a Graham analysis of the prior art nor
put on a technical expert with an opinion on the obviousness issue.
E.I.L.'s lack of proof demonstrates that the jury had no choice but
to find for Altech on obviousness.

Plaintiffs also assert that the prosecution history shows
that the examiner fully considered claim 24/23/10, which did not
"slip through" the PTO by accident.  Insisting that Claim 24 was
substantively examined on the merits and allowed over prior art,
they detail the steps pursued by Alsenz in the prosecution of his
patent application, including Alsenz's efforts to distinguish his
invention from the prior art patents.[19]  Plaintiffs' Response

_____

[19] Specifically, Plaintiffs point out that when Claim 24 was
initially submitted in a Preliminary Amendment (JX-776, Ex. W, Tab
23 at 10 (000039); Ex. A, TT, Vol. 7A at p. 1517), Alsenz pointed
out the prior art relied on by the Examiner that did not show the
claimed inventions.  He contended that Goldber disclosed a system
"inherently limited to a LIFO (last in-first out) system.  Id. at
19 (000048).  He argued that Evalds disclosed a plurality of
individual heater control circuits, which were arranged to be
activated serially in a FIFO procedure.  Id. at 20 (000049).
Alsenz further stated that Goldber and Evalds were not compatible
and could not be combined.  He emphasized many advantages of his

- 31 -

(#453) at pp. 15-18.  Maintaining that the examiner distinguished

those claims that E.I.L. now argues are of similar scope to Claim

_____

invention over Goldber and Evalds.

Plaintiffs insist that in the First Office Action, when the Examiner rejected Claim 24 (JX-776, Ex. W, Tab 27), a substantive examination occurred.  Ex. A, TT, Vol. 7A at p. 1519. The examiner rejected several claims, including Claims 24 and 6, for improper use of the word "tandem," which the examiner maintained meant "in series." Ex. A, TT, Vol. 7A at 1520.  When Alsenz filed a Response dealing with the prior art (JX-776, Ex. W, Tab 31), the examiner issued a Second Office Action, which Medlock testified reflected a substantive review of Claim 24 and which rejected claim 24/23/10 by adding a new prior art reference to Friedman.  Ex. A, TT, Vol. 7A at pp. 1521-22.

Alsenz filed a response to the Second Office Action that discussed Goldber, Evalds and Friedman.  JX-776, Ex. W, Tab 36; Id. Alsenz distinguished his invention from Goldber because Goldber disclosed compressors connected in series that were controlled with a LIFO strategy, while Evalds disclosed a heater arrangement that controlled heaters using a tandem FIFO strategy, but no the parallel FIFO scheme to control compressors.  Ex. A, TT, Vol. 7A t 1523-24.

In the next Office Action, the examiner indicated certain claims would be allowable if rewritten as independent claims but did not mention Claim 24/23/10.  Id. at 1524-26.  When Alsenz's attorney pointed out that the examiner had failed to indicate whether certain claims including 24/23/10 were allowable and that counsel would err on the side of caution and view them as rejected, counsel asked for reconsideration in view of an affidavit from Alsenz and a lack of evidence supporting the examiner's position. Id. at 1526-28.

The examiner then issued an Advisory Action indicating Claim 24 was allowable.  JX-776, Ex. W, Tab 39.

Plaintiffs represent that Alsenz then appealed only non-allowed claims.  The examiner in an Answer confirmed that Claim 24 had been allowed.  JX-776, Ex. W, Tab 41-42 at Bates Nos. 000198 and 000234.  The Board of Appeals affirmed the examiner's rejection of appealed claims but did not address Claim 24/23/10 or any other allowed claims.

Alsenz's attorney then submitted new Claim 42, which combined together the limitations of Claim 24/23/10 into an independent claim.  JX-776, Ex. W, Tab 56 at 9 (000403); Ex. A, TT, Vol. 7A at 1535-37.  The examiner then allowed Claim 24,  TT, Vol. 7A at 1538.  Plaintiffs insist that Claim 24 did not "slip through," but was considered on its merits and allowed over the prior art.

- 32 -

24/23/10, Plaintiffs particularly note that in the examiners's Answer, the examiner rejected a number of claims because Alsenz misused the word "tandem," which the examiner asserted meant "in series,"[20] and rejected claims over prior art based on Alsenz's misuse of the word.  TT, Vol. 6A at pp. 1244-48.  Claim 17/16/6 used the word "tandem," while Claim 24/23/20 did not.  They conclude that the examiner determined that Claim 24 was allowable over the prior art of record and that Claim 24 was substantively examined.

### E.I.L.'s Reply

In reply E.I.L. contends that prosecution history is not only admissible, but it presents the strongest evidence of what a person of ordinary skill in the art had available at the time of the '776 application.  The Federal Circuit has made clear that such evidence is even favored because it aids in determining the burden which the defendant must meet to overcome the presumption of validity.  Here E.I.L. insists that its '776 patent prosecution history evidence provides clear and convincing evidence that Claim 24 is obvious in view of the scope and content of the prior art.

Moreover, regarding secondary considerations, E.I.L. asserts that each of the factors argued by Altech fails to reach the level of substantial to justify the jury's conclusion that

---

[20] JX-776, Ex. W, Tab 42 at 000235-36; Ex. A, TT, Vol. 7a at 1532-22.

Claim 24 was not obvious because Altech has not supported its argument objectively by showing that Claim 24 was not invalidated during the prosecution history and the trial. Therefore Altech can present no "substantial" evidence on which a jury could have reasonably relied to conclude that Claim 24 was not obvious.

E.I.L. reiterates the JMOL standard it must meet to obtain a court ruling invalidating Claim 24 because there is not substantial evidence in the record to support the jury's conclusion. Even though it bears the burden of proof on obviousness, E.I.L. is entitled to a JMOL if (1) it has "established [its] case by evidence that the jury would not be at liberty to disbelieve" and (2) "the only reasonable conclusion is in [E.I.L.'s] favor." Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1065 (Fed. Cir. 1998)(en banc), cert. denied, 119 S. Ct. 178 (1998)("[I]n unusual cases, an admission made by a plaintiff's witness can be sufficient to support entry of a JMOL in favor of defendant after the close of the plaintiff's case-in-chief, even where the defendant bears the burden of proof on the decided issue.").[21]

E.I.L. emphasizes that when new evidence is introduced at

_____

[21] E.I.L. points out that the court in Nobelpharma granted a JMOL in favor of a defendant who bore the burden of proof to show invalidity by clear and convincing evidence before the defendant presented its case-in-chief. 141 F.3d at 1065-66. It considered testimony by the patentee-plaintiff's own witness that the best mode known at the time of application was not disclosed in the application sufficient to justify a JMOL in favor of defendant immediately after plaintiff's case-in-chief.

- 34 -

trial that was not considered by the PTO, the presumption of patent validity is not affected, but the burden of proof in overturning it is at least partially discharged.  American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1359-60 (Fed. Cir. 1984)("When new evidence touching the validity of the patent not considered by the PTO is relied on, the tribunal considering it is not faced with having to disagree with the PTO or with deferring to its judgment or with taking its expertise into account.  The evidence may, therefore, carry more weight and go further toward sustaining the attacker's unchanging burden."), cert. denied, 469 U.S. 821 (1984); Mendenhall v. Cedarapids, Inc., 5 F.3d 1557, 1564 (Fed. Cir. 1993)(approving jury instruction that the jury "should consider the evidence presented to the Patent Office during the reissue application process, compare it with the evidence that you have heard in this case, and then determine what weight to give the Patent Office's determinations."), cert. denied, 511 U.S. 1031 (1994).

        E.I.L. complains that in citing Magnavision, 115 F.3d 956, for the proposition that "prosecution irregularities are not relevant to patent validity," Altech takes the statement out of context.  The "irregularities" asserted by the defendant were the examiner's failure to file a written report separate from the notice of allowance when he decided to allow the claims and the patent attorney's "remarkable persistence" in prosecuting the claims.  Id. at 960.  The court considered the defendant's pre-

trial claim of inequitable conduct based on these actions and decided against the defendant by summary judgment. _Id._ Subsequently the defendant again raised the issues during trial as evidence supporting its claim of invalidity of the patent. _Id._ The Federal Circuit then stated, "The court having held pretrial that there was not inequitable conduct, 'prosecution irregularities' by the examiner or the applicant are not relevant to patent validity." _Id._ at 960-61. In context, insists E.I.L., it is not the general rule that "prosecution irregularities" never constitute evidence relevant to patent validity. Furthermore, E.I.L. argues, the facts in the prosecution history of the '776 patent rise well above mere "prosecution irregularities."

E.I.L. asserts that contrary to Altech's charges, E.I.L. has never contended that a canceled or rejected claim constitutes prior art to the other claims in the patent application. Rather, the canceled or rejected claims provide evidence about the scope and content of the prior art, as determined by the examiner. Furthermore, Altech's absolute interpretation of _Interconnect Planning_ as standing for the proposition that a "claim rejected during patent prosecution simply has no relevance to the validity of the surviving claims" is incorrect. E.I.L. asserts that instead, the case supports E.I.L.'s position that the canceled claims of the '776 application are relevant to a determination that Claim 24 is obvious because the claims rejected by the examiner are substantially identical to Claim 24 and therefore the examiner's

- 36 -

rejection of them provides evidence as to the scope and content of the prior art.  E.I.L. notes that Interconnect Planning relies on two decisions, Westwood Chemical Inc. v. United States, 525 F.2d 1367, 1375 (Ct. Cl. 1975), and Bourns, Inc. v. United States, 537 F.2d 486 (Ct. Cl. 1976),[22] which emphatically support E.I.L.'s argument.[23]

---

[22] Regarding Bourns, E.I.L. summarizes,

> In the terms used by Bourns, the unadjudicated claim (claim 24 of the '776 patent) is substantially identical to one or more adjudicated claims (rejected claims 17/16/6 and 23/10 of the '776 application), the only distinguishing feature is insignificant (a time circuit as a particular type of timing means, at most), and the same issues are involved (invalid for obviousness).  As a result, the clear import of the Bourns holding that "collateral estoppel" should apply to claim 24, i.e., the obviousness of rejected claims 17/16/6 and 23/10 should also apply to claim 24.

Reply at 7.

[23] In Bourns, which deals with collateral estoppel as to unadjudicated claims of a patent whose other claims had been adjudicated in a prior action, the court wrote,

> Where, as here, the distinguishing features of the adjudicated and unadjudicated claims appear to be the same, and neither the text of the patent nor the plaintiffs here attribute any importance or significance to the additional elements included in the unadjudicated claims, it is difficult to justify a further trial merely because of the presence of those elements in the claims.

E.I.L. argues in Bourns' terms that because unadjudicated claim 24 of the '776 patent is substantially identical to one or more adjudicated claims, i.e., rejected claims 17/16/6 and 23/10 of the '776 patent application, with the only addition or difference being

- 37 -

E.I.L. also maintains that the record contains indisputable evidence that Claim 24 of the '776 patent is invalid for obviousness. Contrary to Altech's allegations, E.I.L. has explicitly addressed each of the <u>Graham</u> factors in an obviousness analysis and presented overwhelming evidence of obviousness.

As for Altech's dismissal of Medlock because he had no opinion on the obviousness of Claim 24, E.I.L. points out that Medlock is a patent expert, not a technical expert, and that even technical experts' conclusions regarding obviousness are viewed skeptically. <u>Mendenhall v. Cedarapids, Inc.</u>, 5 F.3d at 1574 ("Indeed, the spectacle of experts arguing over the legal conclusions of obviousness before the jury, even if not error, should be avoided inasmuch as such opinions are not substantive evidence."); <u>Nutrition 21 v. United States</u>, 930 F.2d 867, 871 (Fed. Cir. 1991)("An expert's own opinion on the ultimate legal conclusion is neither required nor indeed 'evidence' at all.").

E.I.L. insists that the scope and content of the prior art include all the elements of Claim 24 of the '776 patent. As the Federal Circuit held in <u>Bourns</u>, when two claims are substantially identical and the question of validity of the two claims involves the same issues, then the <u>Graham</u> analysis of the adjudicated claim may be applied to the unadjudicated claim. Such

_____

the insignificant feature a type of timing means, and because the issues are the same (invalid for obviousness), collateral estoppel should apply to Claim 24, i.e., the obviousness of rejected claims 17/16/6 and 23/10 should also apply to Claim 24.

an approach is an acceptable practice of showing invalidity of an unadjudicated claim that has an additional insignificant element, even in view of the accepted rule that a claim must be considered as a whole.

E.I.L. contends that the two application claims rejected by the examiner using the Graham analysis constitute indisputable evidence that the scope and content of the prior art include the subject matter claimed by Claim 24 of the '776 patent. The strength of this evidence is increased by the Board of Patent Appeals and Interferences' affirmance of the rejection by the examiner. Ex. A, JX-776, Tab 54, at pp. 391-92. E.I.L. reiterates that rejected application claim 17/16/6 is materially identical to patent Claim 24 (Ex. B, DX-200) and that 17/16/6 was rejected as obvious because the combination of the prior art (Goldber, Evalds, and Friedman patents) taught the claimed subject matter. E.I.L. maintains that this determination by the examiner and the Board is sufficient to prove convincingly that Claim 24 is obvious in view of the same combination of the prior art patents.

Altech contends that rejected claim 17/16/6 is materially different from Claim 24 because of the inclusion of the word "tandem." E.I.L. argues that rejected application claim 23/10 also provides overwhelming evidence that claim 24 is obvious. Altech does not argue that Claim 24 differs from rejected application claim 23/10 except that the delay means of claim 23/10 is specified as a timing circuit in Claim 24. Like rejected

- 39 -

application claim 17/16/6, claim 23/10 was rejected by the examiner based on the same three prior art patents, and the rejection was affirmed on appeal.  As in Bourns, the designation of the timing circuit in claim 24 is an insignificant difference when conducting a Graham obviousness analysis.  Neither party nor any witnesses claimed that the inclusion of a timing circuit in the claimed combination of Claim 24 was significant to the invention as a whole.  Alsenz conceded that the Goldber prior art included a timer circuit in its invention.  TT, Vol. 6A at p. 1181.  Thus there is no evidence that the timing circuit has any significance as a patentable element over and above the elements that were rejected as obvious in application claim 23/10.  In sum, argues E.I.L., the invention as a whole, including the time circuit of Claim 24, was rendered obvious in view of the suggested combination of Goldber, Evalds, and Friedman.  Altech has not presented any substantial evidence on which the jury could have relied to conclude that Claim 24 was not obvious in view of these three prior art patents.  The rejection by the examiner and the Board of Patent Appeals and Interferences of application claims 17/16/6 and 23/10 constitutes overwhelming evidence that Claim 24 is also obvious and therefore invalid.

E.I.L. also contests Altech's argument that secondary factors here constitute substantial, potent evidence to demonstrate that Claim 24 was not obvious.  In Newell Companies, Inc. v. Kennedy Mfg. Co., 864 F.2d 757, 768 (Fed. Cir. 1988), cert. denied,

493 U.S. 757 (1989), E.I.L. asserts, the Federal Circuit rejected a similar argument to that made by Altech here:

> Despite a very strong <u>prima facie</u> case of obviousness established by the evidence, Newell [the patentee] argues that the district court was obligated to draw the "inference" of nonobviousness from [the patentee's] evidence of commercial success, copying by others, and other secondary considerations. These arguments were unpersuasive to the trial court and are unpersuasive to us. First, as indicated, obviousness is not a factual inference; second, although these factors must be considered, they do not control the obviousness conclusion.

Therefore Altech's evidence of secondary considerations does not rise to the level of substantial evidence that could support a reasonable conclusion by a jury that Claim 24 of the '776 patent was not obvious.

E.I.L. also notes that during the prosecution history Alsenz raised the same argument as here that the prior art taught away from the subject matter of Claim 24. The examiner found that argument unpersuasive and finally rejected application claims 17/16/6 and 23/10, which contain all the significant elements of Claim 24. Ex. F; TT, Vol. 7A at pp. 1522-24 (Medlock testimony).

As for Altech's evidence of industry adoption of the invention indicating industry acceptance, or commercial success, E.I.L. emphasizes that a "nexus is required between the merits of the claimed invention and the evidence offered, if that evidence is to be given substantial weight enroute to conclusion on the obviousness issue." <u>Stratoflex</u>, 713 F.2d at 1539. Altech's

- 41 -

reliance on Shelton's testimony is inadequate since Shelton's only knowledge was the purchase by Weingarten's, where Altech originally "tested" the product at no cost to Weingarten's. Shelton testimony, TT, Vol. 2A at pp. 441-42. Shelton also testified later that any success that the invention had could just as easily have been due to management, marketing, and service offerings of Altech. TT. Vol. 3 at p. 556. Altech never established the requisite nexus. Furthermore, while the original prototype achieved substantial savings of energy (DX-51), that prototype used the prior art LIFO method, thus demonstrating that any commercial success was not attributable to the claimed subject matter, but to unpatentable features.

Altech's evidence of long-felt need and praise from others does not rise to the level of substantial evidence, E.I.L. maintains. E.I.L. remarks that Altech has not presented enough evidence to prove that the results of the invention of Claim 24 were better than other products in the public domain. E.I.L. reiterates that the features responsible for the "significant energy savings" were present in the prior art Hussman device. Ex. G, DC-67.

In sum, argues E.I.L., Altech's argument that secondary considerations rise to the level of "substantial" evidence sufficient to overcome E.I.L.'s clear and convincing proof of obviousness is unpersuasive. It is evident that no reasonable jury could have relied on such insubstantial evidence to conclude that

evidence in the record as a whole to support the jury's finding that Claim 24 was not obvious, but E.I.L. has demonstrating that a reasonable jury would not be at liberty to disbelieve its evidence ant that the only reasonable conclusion is that Claim 24 is invalid for obviousness.

The Court observes that this case is highly unusual because it does not simply question the correctness of the examiner and the Board of Patent Appeals' final determination to allow Claim 24 based on a review of the evidence, but attacks the logical inconsistencies in the examiner's inexplicably disparate treatment of materially identical claims after Claim 24 was left off of the list of allowable claims and not addressed and specifically designated by the examiner, as all claims should have been, by the examiner. JX-776, Tab 37, at p. 185.

By its detailed and meticulous examination of the substance of the relevant and materially identical claims of the '776 patent application and their relationship of dependency to each other, as well as its tracing of amendments of claims during the prosecution history against the backdrop of the prior art, E.I.L. has made a compelling case that Claim 24 should not have been allowed in the Office Action following the Third Office Action, as well as shown through patent application procedures expert Medlock that an Advisory Action is not a substantive review. E.I.L. has also highlighted the significance of the Board of Patent Appeals and Interferences' affirmance of the examiner's rejections,

based on the prior art of Goldber, Evalds, and Friedman, of materially identical Claims 6, 16, 17, and 23/10 for obviousness,[23] with the last including all the limitations of Patent Claim 24 other than the irrelevant because unpatentable timing circuit. Their opinion established that the combination disclosed in Claim 23/10 would have been obvious at the time of invention to one of ordinary skill in the art armed with the teachings of Evalds, Friedman and Goldber.

With regard to evidence of secondary considerations, the Court finds that Plaintiffs have not presented substantial evidence of such factors to overcome the clear and convincing evidence that Claim 24 should have been invalidated during the prosecution history. The Court notes that Plaintiffs have not responded to E.I.L.'s contention that its RC-48 controller was in the marketplace two years before the issuance of the '776 patent and therefore could not have copied the subject matter of claim 24. Nor have they answered E.I.L.'s argument that the energy saving features (the means for establishing the upper and lower suction pressure set points and the time delay) were within the subject matter of public domain claim 23/10, as well as found in the prior art Hussman device. More to the heart of the matter, this Court agrees that in affirming the rejection of 17/16/6, the Board of Patent Appeals and Interferences agreed with the examiner's

---

[23] These rejected claims were thus in the public domain and therefore obvious to one of ordinary skill in the art and unpatentable.

conclusion that objective evidence of secondary considerations failed to overcome the examiner's determinations of obviousness is materially identical claims that were rejected.

The Court finds that E.I.L. has presented clear and convincing evidence that Claim 24 at the time of the patent application was obvious in view of the scope and content of the prior art. The Court further concludes that a reasonable jury could not disbelieve E.I.L.'s evidence and that the only reasonable conclusion in view of the record as a whole is that the patent examiner erred in allowing patent Claim 24. Thus the Court concludes that it should be invalidated as obvious. Accordingly, the Court

ORDERS that E.I.L.'s motion for JMOL that Claim 24 of the '776 patent is invalid for obviousness under 35 U.S.C. § 103 is GRANTED.

**SIGNED** at Houston, Texas, this _8th_ day of September, 1999.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE


- 45 -